**MENTAL HYGIENE LEGAL SERVICE, Plaintiff,**

v.

**Andrew CUOMO, in his official capacity as Governor of the State of New York, et al., Defendants.**

**No. 07 Civ. 2935(DAB).**

United States District Court, S.D. New York.

March 29, 2011.

Sadie Zea Ishee, Mental Hygiene Legal Service, New York, NY, Dennis Bruce Feld, Mental Hygiene Legal Service, Second Judicial Dept., Mineola, NY, Hollie Sue Levine, Mental Hygiene Legal Service, Third Dept., Binghamton, NY, for Plaintiff.

Edward J. Curtis, Jr., Joshua Benjamin Pepper, New York State Department of Law, New York, NY, for Defendants.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, District Judge.

Plaintiff Mental Hygiene Legal Service ("MHLS") brings this declaratory judgment action against Andrew Cuomo, in his official capacity as Governor of the State of New York,[1] Eric Schneiderman, in his official capacity as Attorney General of the State of New York, Michael Hogan, in his official capacity as Commissioner of the New York State Office of Mental Health, Courtney Burke, in her official capacity as

---

**1.** Parties are automatically substituted pursu- ant to Fed.R.Civ.P. 25(d).

Acting Commissioner of the New York State Office for People With Developmental Disabilities, and Brian Fischer, in his official capacity as Commissioner of the New York State Department of Correctional Services ("DOCS"), (collectively, "Defendants") as a pre-enforcement, facial challenge to certain provisions of the New York Sex Offender Management and Treatment Act ("SOMTA" or the "Act"), codified within New York Mental Hygiene Law (MHL) Article 10. SOMTA creates a new legal regime authorizing "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other period of state custody. Such civil management is predicated on the danger to society that recidivist sex offenders pose. *See generally* MHL Art. 10.

The Act became effective on April 13, 2007, the day after Plaintiff commenced this action, which challenges seven provisions of the Act, namely:

(A) MHL § 10.06(f), which authorizes the New York Attorney General to issue a "securing petition" to detain certain individuals beyond the completion of their term of imprisonment, in advance of a probable cause hearing, without notice or opportunity for review;

(B) MHL § 10.06(k), which mandates involuntary civil detention pending the commitment trial, based on a finding at the probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness;

(C) MHL § 10.06(j)(iii), which forbids an individual indicted for a crime but found incompetent to stand trial to contest the commission of the acts that constituted the crime at the probable cause hearing;

(D) MHL § 10.07(d), which authorizes civil commitment for persons found incompetent to stand trial and never convicted of any offense based on a showing by clear and convincing evidence that they committed the sexual offense with which they were charged;

(E) MHL § 10.07(c), which authorizes the factfinder at the commitment trial to make a retroactive determination by clear and convincing evidence that certain non-sex crimes were committed with a "sexual[ ] motivat[ion]";

(F) MHL § 10.05(e), which authorizes certain pre-hearing psychiatric examinations, in the absence of counsel, of individuals subject to the Act;

(G) MHL § 33.13(c)(9)(vii), which permits the release of confidential clinical and medical records of certain individuals subject to the Act under certain specified circumstances.

Plaintiff has since withdrawn its challenge to MHL § 33.13. (Pl.'s M. Sum. J. 1 n. 1.) On April 16, 2007, Plaintiff moved for preliminary injunctive relief and on May 16, 2007, Defendants moved to dismiss the Complaint. On November 16, 2007, then District Judge Gerard E. Lynch granted Defendants' Motion to Dismiss with respect to § 10.06(j)(iii), finding that as a matter of law "the probable cause established by an indictment is a sufficient showing of potential guilt to warrant pretrial detention where an individualized showing of mental abnormality and dangerousness have been made." *Mental Hygiene Legal Service v. Spitzer*, No. 07 Civ. 2935, 2007 WL 4115936, at *17 (S.D.N.Y. Nov. 16, 2007). In that same order, Judge Lynch also granted Plaintiff's motion to enjoin enforcement of two of the Act's other provisions, §§ 10.06(k) and 10.07(d), finding that Plaintiff had demonstrated a

substantial likelihood of success on the merits where § 10.06(k) allowed for detention without an individualized finding of dangerousness and § 10.07(d) allowed a person never convicted of a crime to be labeled a "sex offender" based on conduct proved only by "clear and convincing evidence" rather than "beyond a reasonable doubt." *Id.* at **15, 21. On appeal, the Circuit Court summarily affirmed Judge Lynch's order. *Mental Hygiene Legal Services v. Paterson*, No. 07–5548–CV, 2009 WL 579445, at *1 (2d Cir. Mar. 4, 2009).

Both parties now move for summary judgment. In addition to the parties' respective arguments on the merits, Defendants further move on the bases of standing and abstention. After the motions were fully briefed, Judge Lynch was elevated to the Second Circuit and, on October 1, 2009, the case was reassigned to this Court.

## I. FACTUAL BACKGROUND

Additional facts concerning SOMTA and its specific provisions at issue in this case are set forth in Judge Lynch's Opinion and Order of November 16, 2007, and will not be reiterated fully here. *See Mental Hygiene Legal Service v. Spitzer*, 2007 WL 4115936, at *1–8 (S.D.N.Y. Nov. 16, 2007). Under SOMTA, when a "detained sex offender" [2] nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether that person should be referred for more extensive evaluation. § 10.05(d). If they determine that additional evaluation is necessary, a "case review team" of three individuals, at least two of whom must be mental health professionals, determines whether that person (termed a "respondent" upon referral to the case review team) requires additional "civil management." § 10.06(a). Additionally, "notice of referral shall be provided to the respondent." § 10.05(e). "Civil management" ultimately can require either indefinite civil commitment or a regimen of strict and intensive out-patient treatment and supervision. MHL § 10.03(q). As of the time the instant motions were fully submitted, the multidisciplinary staff had reviewed at least 2,892 cases and referred 507 to the case review team. (Miraglia Decl. ¶ 5.)

**2.** The term "detained sex offender" includes the following six classes of person:

"(1) A person who stands convicted of a sex offense ... and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense;

(2) A person charged with a sex offense who has been determined to be an incapacitated person with respect to that offense and has been committed pursuant to article seven hundred thirty of the criminal procedure law, but did engage in the conduct constituting such offense;

(3) A person charged with a sex offense who has been found not responsible by reason of mental disease or defect for the commission of that offense;

(4) A person who stands convicted of a designated felony that was sexually motivat-ed and committed prior to the effective date of this article;

(5) A person convicted of a sex offense who is, or was at any time after September first, two thousand five, a patient in a hospital operated by the office of mental health, and who was admitted directly to such facility pursuant to article nine of this title or section four hundred two of the correction law [both laws regarding hospitalization of the mentally ill] upon release or conditional release from a correctional facility, provided that the provisions of this article shall not be deemed to shorten or lengthen the time for which such person may be held pursuant to such article or section respectively; or

(6) A person who has been determined to be a sex offender requiring civil management pursuant to this article."

§ 10.03(g).

Under the Act, the case review team then determines whether the respondent both suffers from a "mental abnormality" and is, therefore, either "a dangerous sex offender requiring confinement" or "a sex offender requiring strict and intensive supervision." § 10.03(i), (q). Those terms are defined in §§ 10.03(i), 10.03(e), and 10.03(r), respectively. A determination that the respondent does *not* require additional civil management may be made immediately upon initial review by the case review team. (Miraglia Decl. ¶ 8.) As of briefing, the case review team disposed of at least 169 of its 507 referrals in such a manner. *Id.* When the case review team determines that additional civil management *is* appropriate, however, it is authorized to "arrange for a psychiatric examination of the respondent" and to consider other extant records. § 10.05(e).

Furthermore, "if it appears that the respondent may be released prior to the time the case review team makes a determination, and the Attorney General determines that the protection of public safety so requires, the Attorney General may file a securing petition" to prevent the respondent's release from custody while review is ongoing. § 10.06(f).[3]

If the case review team determines that the respondent requires additional civil management, the Attorney General may file a "sex offender civil management petition" in New York State court, which, within 30 days of such a filing, must conduct a hearing to determine whether there is probable cause to believe the respondent requires civil management.[4] §§ 10.06(a), (g), and (k). If the respondent is at liberty when the civil management petition is filed, or if he or she becomes eligible for release prior to the probable cause hearing, then "the court *shall* order the respondent's return to confinement" or a stay of his or her release, as the case may be, pending completion of the probable cause hearing.[5] § 10.06(h) (emphasis added).

Upon a court's finding of probable cause that the respondent is a sex offender requiring civil management, which ultimately may require either confinement or supervision, SOMTA mandates that the respondent be committed to a secure treatment facility pending resolution of a full commitment trial. § 10.06(k).[6]

---

3. The plain meaning of this provision is unclear. Plaintiff alleges that a "securing position" is, in and of itself, an executive order compelling the respondent's continued detention, without opportunity for judicial review. (Compl. ¶ 56.) Defendants, however, argue that the "Attorney General interprets the term 'file' to mean the securing petition must be filed in a court of law, and the Attorney General has always filed securing petitions in courts of law." (Defs.' M. Sum. J. 13.)

4. A respondent may consent to a longer period than 30 days between filing of the sex offender civil management petition and the probable cause hearing. § 10.06(g).

5. When the court issues such an order, the hearing must commence within 72 hours of the respondent's return or anticipated release date, unless the respondent consents to a longer period or the Attorney General shows good cause for the delay. § 10.06(h). In any event, however, "failure to commence the probable cause hearing within the time periods specified shall not result in the dismissal of the petition and shall not affect the validity of the hearing or the probable cause determination." *Id.*

6. Judge Lynch's Order of November 16, 2007, enjoined any civil commitment prior to completion of a full commitment trial pursuant to a § 10.06(k) without "a specific, individualized judicial finding of probable cause to believe that the person is sufficiently dangerous to require confinement, and that lesser conditions of confinement will not suffice to protect the public during the pendency of the proceedings ..." (Nov. 16, 2007 Order at *16.) Accordingly, Judge Lynch's Order precludes confinement of any respondent for whom there is probable cause only to require "strict and intensive supervision."

At the commitment trial, the jury (or judge if the right to a jury trial is waived) is to determine by "clear and convincing evidence" whether or not the respondent is a sex offender suffering from a "mental abnormality" and, if so, whether respondent "is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision." §§ 10.07(a), (d), (f). If the factfinder finds that confinement is required, then the respondent is committed to a secure treatment facility "until such time as he or she no longer requires confinement." § 10.09(b). If the factfinder finds that strict and intensive supervision is required, then the respondent shall be subject to such a regimen. § 10.07(f).

Because not all "detained sex offenders" subject to SOMTA have been convicted of a sex offense, in certain cases the jury must determine additional, previously unresolved issues before finding the respondent a sex offender requiring civil management.[7] For respondents already convicted of a sex offense, the jury need not rehear evidence of the conviction nor may respondent relitigate his or her conviction. § 10.07(c). Similarly, conviction is deemed established for respondents previously found not responsible by reason of mental disease or defect. *Id.* For persons convict-ed of certain "designated felonies," however-er, the jury must determine whether that offense was "sexually motivated." *Id.* Additionally, for persons charged with a sex offense but initially found unfit to stand trial pursuant to Article 730 of the criminal procedure law (each, an "Article 730 defendant"), the jury must determine by clear and convincing evidence whether the respondent actually engaged in the conduct constituting the sex offense charged. § 10.07(d).[8] As of briefing, the Attorney General had filed no civil management petitions against respondents initially determined unfit to stand trial for a charged sex offense, though Article 730 Defendants nearing an anticipated release date have been referred for review.[9] (Gagan Decl. ¶ 43; Miraglia Decl. ¶ 30; Second Ishee Decl. ¶ 10.)

Over 300 civil management petitions had been filed by the Attorney General as of briefing, approximately 200 of which remain pending in trial court or on appeal. (Gagan Decl. ¶ 7.) Plaintiff has conceded that any respondent to these petitions may challenge the constitutionality of any provisions of SOMTA that arise in his or her proceedings. (Pepper Decl., Ex. 3 (Plaintiff's Response to Defendants' Request for Admission No. 42).)

---

7. As discussed in Note 2, *supra,* the term "detained sex offender," as defined by § 10.03(g), includes six classes of persons. Persons classified as detained sex offenders pursuant to § 10.03(g)(1) and (5) are those who stand convicted of a sex offense. However, §§ 10.03(g)(2) and (3) include those found unfit to stand trial ("Article 730 defendants") and those found not responsible by reason of mental disease or defect ("Article 330 defendants"). Additionally, § 10.03(g)(4) includes those convicted prior to the Act's effective date of certain "designated felonies," which are not defined as sex offenses under the New York Penal Law, if commission of the felony was "sexually motivated." Lastly, § 10.03(g)(6) includes those determined to be a sex offender requiring civil management pursuant to SOMTA itself.

8. Judge Lynch's Order of November 16, 2007, enjoined Defendants from committing under § 10.07(d) any Article 730 defendant, unless the jury finds *beyond a reasonable doubt* that the respondent engaged in conduct constituting the underlying offense.

9. A person adjudicated incompetent to stand trial may be detained pursuant to Article 730 for a period of time not to exceed "two-thirds of the authorized maximum term of imprisonment for the highest class felony charged in the indictment." NYCPL § 730.50.

Plaintiff MHLS is a state agency under a statutory mandate "[t]o initiate and take any legal action deemed necessary to safeguard the right of any patient or resident to protection from abuse or mistreatment ..." § 47.03(e). Furthermore, SOMTA compels MHLS to provide legal services and assistance to persons against whom a civil management petition is filed. §§ 10.03(d), 10.06(c), 10.13(c), 47.01, and 47.03(f). MHLS Deputy Director Stephen Harkavay testified that MHLS's constituents include current residents in psychiatric facilities, but not persons in DOCS custody being evaluated by the multidisciplinary staff or case review team who have not affirmatively appointed MHLS as counsel. (Harkavy Dep. 38:11–16; 47:5–9.) Plaintiff has averred that, at the time it filed its complaint, at least twenty-two of its constituents were Article 730 defendants charged with a sex offense but found incompetent to stand trial. (Pl.'s Opp. Br. 8; Affirmation of Dawn Mulder ¶ 3; Affirmation of Mary Beth Feerick ¶ 2; Affirmation of David M. LeVine ¶¶ 2, 3; Affirmation of Anne Carberry Priore ¶¶ 3, 4.) Because Plaintiff filed suit before SOMTA became effective, no civil management petitions had been filed against any of those constituents at that time.

## II. STANDING AND ABSTENTION

### A. Standing

The Court first addresses Defendants' jurisdictional argument that Plaintiff MHLS lacks standing to maintain this suit. Defendants argue that Plaintiff lacks standing to assert its Second, Third, and Fourth Claims regarding Article 730 defendants under § 10.07(d) as well as to

assert its First Claim regarding securing petitions under § 10.06(f). Plaintiff asserts associational standing on behalf of its constituent clients.[10] (Compl. ¶ 39; Pl.'s Opp. Br. 1–11.)

1. Legal Standard for Standing Analysis

■ In the absence of harm to the association itself, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also Food and Commercial Workers v. Brown Group, Inc.*, 517 U.S. 544, 551–53, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); *Bano v. Union Carbide Corp.*, 361 F.3d 696, 713–14 (2d Cir.2006). Not all of an association's members must otherwise have standing in their own right; it is enough that "any one of them" would. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 65–66, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). Finally,

"whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective

---

**10.** MHLS's status as a state agency does not affect the associational standing inquiry. When the characteristics of a state agency and a traditional membership organization are essentially similar, the Supreme Court has

held it would merely "exalt form over substance to differentiate" between them. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 344–45, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."

*Warth,* 422 U.S. at 515, 95 S.Ct. 2197.

It is undisputed that the interests Plaintiff seeks to protect are germane to its purposes. Indeed, MHLS is statutorily compelled to protect the interests of those to whom SOMTA applies. § 47.03(e). Furthermore, Defendants do not argue that individual members' participation in the lawsuit is required. Given that Plaintiff seeks only declaratory judgment and injunctive relief, the sole question in this associational standing inquiry is the first prong of the *Hunt* factors, whether any one of Plaintiff's constituents would otherwise have standing to sue in his or her own right.

 The threshold requirement that a plaintiff have standing to sue is rooted in separation of powers concerns under the United States Constitution in general and the case-or-controversy requirement of Art. III, § 2 in particular. *See, e.g., Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). As an "irreducible constitutional minimum," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), individual standing contains three elements: "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Federal Election Comm'n,* 554 U.S. 724, 128 S.Ct. 2759, 2768, 171 L.Ed.2d 737 (2008) (citing *Lujan,* 504 U.S. at 560–561, 112 S.Ct. 2130); *see also Vermont Agency of Natural Resources v. U.S. ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In addition to the "constitutional minimum," standing must exist when the complaint is filed,

*Lujan,* 504 U.S. at 569 n. 4, 112 S.Ct. 2130, and be established for each claim of relief. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Finally, "the party invoking federal jurisdiction bears the burden of establishing" the standing requirements. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130.

Here, causation and redressability are foregone conclusions. Assuming Plaintiff can establish that its constituents suffer a concrete, imminent injury on account of SOMTA, then that injury is fairly traceable to enforcement of the Act and likely to be alleviated by enjoining enforcement of the Act. *See Lujan,* 504 U.S. at 561–62, 112 S.Ct. 2130 (noting that when the plaintiff is the object of a challenged government action, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.") Accordingly, the standing inquiry here may be narrowed further to the precise question of whether any of MHLS's constituents have suffered an injury in fact.

 Injury in fact involves the invasion of a legally cognizable interest that is (1) concrete and particularized, *Allen v. Wright,* 468 U.S. 737, 756, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), and (2) "actual or imminent, not conjectural or hypothetical," *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Nevertheless, a plaintiff need not wait for an impending injury to actualize; a "party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis,* 128 S.Ct. at 2769 (citing *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). When mounting a non-First Amendment statutory challenge, the plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement

[but] ... does not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *see also American Booksellers Foundation v. Dean*, 342 F.3d 96, 101 (2d Cir.2003) (citing *Babbitt* as the correct standard for non-First Amendment challenges).

Standing, particularly with respect to the actual-or-imminent component of injury in fact, is closely related to the doctrine of ripeness, in that the application of either is intended to ensure adjudication only where the plaintiff's harm "has matured sufficiently to warrant judicial intervention." *Warth*, 422 U.S. at 499 n. 10, 95 S.Ct. 2197. Indeed, the Second Circuit has extolled the prudence in considering these inquiries interrelatedly. *See, e.g., Brooklyn Legal Services Corp. v. Legal Services Corp.*, 462 F.3d 219, 225–26 (2d Cir.2006) (citing 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3531.12 (2d ed.1984) ("The blending of standing and ripeness theories is so important that courts should become more assiduous to recognize the advantages of" considering the two as part of a single inquiry)). In general, claims predicated on future events are considered fit for adjudication under the ripeness doctrine "when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir.2003). Or, as the Supreme Court put it simply, a claim is ripe if "the issue tendered is a purely legal one." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**2. Plaintiff's Second, Third, and Fourth Claims**

■ Defendants argue that Plaintiff lacks standing to bring its Second, Third, and Fourth Causes of Action challenging the application of MHL § 10.07(d) to Article 730 defendants, because "the Attorney General is nowhere near filing a civil-management [sic] petition against any such individual." (Defs.' Mem. L. 17.) Thus, Defendants argue, Plaintiff cannot sustain its burden of demonstrating a realistic danger.

As noted in Judge Lynch's Order of November 16, 2007, Due Process plainly requires that an individual be found to have committed a criminal offense *beyond a reasonable doubt* before the State may subject him or her to the stigma of being labeled a "sexual offender." 2007 WL 4115936, at *21. In other words, any person initially found incompetent to stand trial under Article 730 and subsequently found by only clear and convincing evidence to be a sex offender requiring civil management under the ambit of § 10.07(d) would, by the statute's very own terms, suffer a concrete harm to a legally cognizable interest. Furthermore, § 10.07(d) applies *expressly* to Article 730 defendants, which is to say the provision identifies on its face a class of persons that includes Plaintiff's constituents. Accordingly, whether an Article 730 defendant might be brought under the ambit of § 10.07(d) is not speculative or hypothetical—it is a certainty—as long as the provision operates at all.

Whether § 10.07(d) will operate, however, is not clear. Before subjecting anyone to a commitment trial, the Attorney General must first *"elect* to file a sex offender civil management petition." § 10.06(a) (emphasis added). Though "the Attorney General *may* file a sex offender civil man-

agement petition," *Id.* (emphasis added), the Attorney General is not compelled to do so. Commencement of the procedure that would ultimately result in the alleged violations of due process and equal protection under § 10.07(d) is thus at the Attorney General's discretion. Moreover, even if the Attorney General files a civil management petition against an Article 730 defendant, SOMTA further requires a state court to find probable cause that the Article 730 defendant is a sex offender requiring civil management, an additional procedural safeguard, before subjecting that Article 730 defendant to a full commitment trial.[11] § 10.06(g), (k).

Consequently, § 10.07(d) poses a "realistic danger," in the sense that whenever it is applied to Plaintiff's constituents, it patently violates the federal Constitution, but it does not pose a "realistic danger," in the sense that Plaintiff's constituents could be removed from exposure to such violations by several of SOMTA's prior procedural requirements. As the Supreme Court noted in *Babbitt,* 442 U.S. at 297, 99 S.Ct. 2301, "[t]he difference between an abstract question and a 'case or controversy' is one of degree," and the issues here before the Court evince that problem.

■ On the one hand, "[f]ederal courts may not issue opinions 'advising what the law would be upon a hypothetical state of facts.'" *Jungels v. New York,* 50 Fed. Appx. 43, 44 (2d Cir.2002) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). Put another way, "[e]ven though

a challenged statute is sure to work the injury alleged, however, adjudication might be postponed until 'a better factual record might be available.'" *Babbitt,* 442 U.S. at 300, 99 S.Ct. 2301 (quoting *Blanchette v. Connecticut General Ins. Corporations,* 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)).

On the other hand, SOMTA is not an antiquated, dormant law, rarely enforced, that has lingered on the books past its prime. Rather, it reflects the Legislature's *contemporary* finding "[t]hat recidivistic sex offenders pose a danger to society that should be addressed," § 10.01(a), and that SOMTA, including § 10.07(d), will adequately address that danger. It is therefore realistic to assume the Attorney General will enforce SOMTA, in its entirety, and, in so doing, pose a concrete danger to Plaintiff's constituents who are Article 730 defendants.

As the Court recognized in *Blanchette,*

"[b]ecause the decision to instigate a criminal prosecution is usually discretionary with the prosecuting authorities, even a person with a settled intention to disobey the law can never be sure that the sanctions of the law will be invoked against him.... [Thus], the maturity of such disputes for resolution before a prosecution begins is decided on a case-by-case basis ..."

*Blanchette,* 419 U.S. at 143 n. 29, 95 S.Ct. 335. Moreover, in the ordinary context of a pre-enforcement challenge to a statute, the statute proscribes some course of con-

---

11. Plaintiff's Second and Third Claims explicitly challenge the constitutionality of this safeguard as well, because § 10.06(j) provides that "[t]he respondent's commission of a sex offense shall be deemed established [if] ... the respondent was indicted for such offense by a grand jury but found to be incompetent to stand trial for such offense." (Compl. ¶¶ 58–65.) Without considering the merits of

Plaintiff's claims at this moment, the Court notes only that the probable cause hearing provides some degree of procedural safeguard in that establishing an Article 730 defendant as a sex offender does not dispose of the full inquiry "whether there is probable cause to believe that the respondent is a sex offender *requiring civil management.*" § 10.06(g) (emphasis added).

*duct*, and the "imminent" or "hypothetical" distinction focuses on whether the state will actually bring an action against the plaintiff pursuant to the statute if the plaintiff chooses to engage in the proscribed conduct. Here, by contrast, SOMTA does not proscribe any course of conduct at all, rather it permits the possibility of civil confinement for certain classes of people (i.e., "detained sex offenders," Article 730 defendants included) merely on account of their *status* as such.

In *Lyons*, the plaintiff was stopped for a traffic violation and then subjected to a choke hold authorized by Los Angeles Police Department's official policy. While permitting a suit in law for damages from that choke hold, the Supreme Court held the plaintiff lacked standing to seek an injunction against future choke holds, because it was merely hypothetical that he would ever be stopped again. *Lyons*, 461 U.S. at 97–98, 103 S.Ct. 1660. By contrast, in *Roe v. City of New York*, standing was upheld where the plaintiffs were "consistently targeted by the NYPD by virtue of their registered participation in, and regular visits to, state-authorized needle exchange programs." *Roe*, 151 F.Supp.2d 495, 503 (S.D.N.Y.2001). The *Roe* Court distinguished *Lyons* on the grounds that the plaintiffs were "an identifiable class of targeted individuals" and that "the facts alleged here"—that the police target "known drug areas" frequented by plaintiffs who often possess needles with drug residue—"constitute more than a 'chain of contingencies making the likelihood of future [arrest] speculative.'" *Id.* at 504 (quoting *National Congress for Puerto Rican Rights v. City of New York*, 75 F.Supp.2d 154, 161 (S.D.N.Y.1999)).

Here, as in *Roe*, Plaintiff's constituents are an identifiable class targeted by the Act's own terms. Section 10.03(g)(2) expressly defines "detained sex offender" to include Article 730 defendants and §§ 10.06(j) and 10.07(d) prescribe specific requirements for probable cause hearings and commitment trials, respectively, of Article 730 defendants. Additionally, there is more than a chain of contingencies here. The fact that the Attorney General may elect to shield some detained sex offenders from the full force of SOMTA's regime does not deny that (1) Article 730 defendants are already and expressly subject to SOMTA, (2) the procedural requirements of SOMTA allegedly deny due process and equal protection to the extent they are utilized, and (3) Article 730 defendants possess no agency on their own—only the hope of favorable official discretion—to avoid the Act's allegedly constitutional violations. Taken together, these facts "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301.

Accordingly, the Court cannot imagine what "better factual record" is necessary to determine whether the commitment trial procedures under § 10.07(d) are, on their face, consistent with the United States Constitution, because "the issue tendered is a purely legal one." *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. 1507. Resolution of this legal issue "would not benefit from any further factual development" nor would the Court be in any "better position to adjudicate the issues in the future than it is now." *Simmonds*, 326 F.3d at 359. If anything, delaying the decision runs the serious risk that consideration of the constitutionality of § 10.07(d) may either be too hasty, out of concern for the allegedly unconstitutional confinement of a litigant actually before the court, to afford protection from the "danger to society" that "recidivistic sex offenders pose," § 10.01(a), if the provision is constitutional, or too dilatory to prevent unjust deprivation of Article 730 defen-

dants' liberty, if the provision is unconstitutional. *See Blanchette,* 419 U.S. at 145, 95 S.Ct. 335 (finding ripeness for adjudication on similar grounds).

Subjecting Article 730 defendants to the allegedly unconstitutional terms of § 10.07(d) poses a "realistic danger" sufficient to satisfy injury in fact and ripeness analysis. Furthermore, it is the operation of § 10.07(d) itself that causes that injury and a judgment enjoining its operation will thereby redress that injury, satisfying the individual standing requirements under Art. III of the United States Constitution. At the time the Complaint was filed, twenty-two of MHLS's constituents were Article 730 defendants, meaning that these identifiable constituents "would otherwise have standing to sue in their own right," *Hunt,* 432 U.S. at 343, 97 S.Ct. 2434, and, given that Plaintiff seeks only prospective relief against enforcement of § 10.07(d), "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members." *Warth,* 422 U.S. at 515, 95 S.Ct. 2197. Accordingly, Plaintiff has associational standing to assert its second, third, and fourth causes of action.

### 3. Plaintiff's First Claim

■ Plaintiff's first cause of action challenges § 10.06(f), which authorizes confinement of detained sex offenders *before* a probable cause hearing, solely on the basis of an executive order (i.e., a "securing petition"). Plaintiff alleges that this provision fails to provide notice, opportunity to challenge, or assistance of counsel. Defendants argue Plaintiff lacks standing to bring this claim, because the Attorney General interprets § 10.06(f) to mean securing petitions must be filed in a court of law and, accordingly, "[i]n all five cases [where a securing petition was filed], the Attorney General notified Plaintiff be-

fore a court appearance and afforded Plaintiff the opportunity to appear on the respondent's behalf in opposition to the petition." (Defs.' Mem. L. 17–18.)

The Court is unpersuaded by Defendants' argument. Standing must exist when the complaint is filed, *Lujan,* 504 U.S. at 569 n. 4, 112 S.Ct. 2130, and the Attorney General's conduct thereafter is immaterial to whether standing existed at the time of filing. Thus, at the time the complaint was filed, Plaintiff possessed standing for the same reasons discussed as to Plaintiff's § 10.07(d) standing: Plaintiff's constituents are necessarily subject to SOMTA, § 10.06(f) is alleged to violate its constituents' constitutional rights, and Plaintiff's constituents possess no agency to avoid violation of their constitutional rights, thus "demonstrat[ing] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301.

In *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 383 (2d Cir. 2000), a case involving a First Amendment challenge by a non-profit membership organization of a Vermont campaign finance law, the State argued the non-profit lacked standing, "because the State has no intention of suing [the non-profit] for its activities." In response, the Second Circuit found:

> "[w]hile that may be so, there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation. In light of this uncertainty, the State's representation cannot remove [the non-profit's] reasonable fear that it will be subjected to penalties for its planned

expressive activities." [12]

*Id.* at 383–84 (internal citations omitted).

The State's position in *Sorrell* and that which Defendants advance here are nearly identical. Whatever interpretation or informal policy the Attorney General may presently follow to afford greater protection than Plaintiff alleges SOMTA prescribes does not preclude him or future attorneys general from deviating from that interpretation or policy in the future, offering no guaranteed protection to Plaintiff's otherwise defenseless constituents.

For the foregoing reasons, the Court concludes that Plaintiff has presented a justiciable case for adjudication.

## B. Abstention

Defendants further argue that the Court should abstain from exercising its jurisdiction under either or both the *Younger* doctrine and the *Pullman* doctrine, because "a state court would more appropriately rule on the issue before [the Court]." (Defs.' Mem. L. 17.) Plaintiff contends that neither doctrine is applicable and, even if it were, *Younger* abstention has been waived. (Pl.'s Opp. Br. 9–12.)

■ As a threshold matter, the Court notes that abstention, under either the *Younger* or the *Pullman* doctrines, is a limited exception to its otherwise "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

The Court may decline to exercise its jurisdiction only

"in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest, for example where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or 'wise judicial administration.'"

*Id.* (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)) (internal citations omitted).

### 1. *Younger* Abstention

■ The *Younger* abstention doctrine derives from *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir.2002). Because ordinarily "a state proceeding provides an adequate forum for the vindication of federal constitutional rights," *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir.1994), *Younger* abstention gives "the respect to our co-equal sovereigns that principles of 'Our Federalism' demand." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 44, 91 S.Ct. 746). Accordingly, *Younger* abstention is required when (1) an ongoing state proceeding (2) implicates important state interests and (3) affords the federal plaintiff judicial

---

**12.** The Second Circuit cited, *inter alia,* the following authority for its position: *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 395, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) ("[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir.1999) (declining in absence of agency rule to rely on "State's litigation position" that it does not interpret statute to apply to issue advocacy); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir.1990) (interpretation of statute offered by Attorney General is not binding because he may "change his mind ... and he may be replaced in office").

review of his or her constitutional claims. *Id.*

██ Defendants claim that *Younger* abstention is appropriate because there are Article 10 proceedings pending in state court against approximately 200 respondents (Gagan Decl., ¶ 7), the State has a legitimate interest in protecting the public from sexual predators, and Article 10 Respondents may challenge the constitutionality of the statute in the context of their Article 10 proceedings. (Defs.' Mem. L., 19–21.)

██ *Younger* abstention is not mandatory unless "state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)). Here, the parties briefed and argued a Motion for Preliminary Injunction and Motion to Dismiss in 2007, and Judge Lynch issued an opinion on the merits. Defendants concede here that there were state proceedings pending before the Motion for Preliminary Injunction and Motion to Dismiss were filed. (Defs.' Reply Mem. L. 9.) Plaintiff contends that Defendants have waived their *Younger* arguments by failing to raise them in the Motion to Dismiss, where Defendants urged the Court to address Plaintiff's claims on the merits. (Pl.'s Mem. L. in Opp. 11–12.) Defendants, on the other hand, assert that *Younger* abstention may be raised at any time. (Defs.' Reply Mem. L. 8.)

The Second Circuit has explicitly found that *Younger* abstention may be waived. *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 373 (2d Cir.2005). Given that *Younger* abstention is no more appropriate now than it would have been when Defendants failed to raise the argu-ment in 2007, and that federal court litigation has proceeded well beyond the "embryonic" stage, this Court declines to abstain. *See Hawaii Housing Auth.,* 467 U.S. at 238, 104 S.Ct. 2321 ("A federal court action in which a preliminary injunction is granted has proceeded well beyond the 'embryonic stage' and considerations of economy/ equity, and federalism counsel against *Younger* abstention at that point.") (internal citations omitted).

2. *Pullman* Abstention

██ The *Pullman* abstention doctrine derives from *Railroad Commission of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and applies when state courts might avoid a federal constitutional issue by interpreting the challenged state law to avoid the constitutional problem. *City of Houston v. Hill,* 482 U.S. 451, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (citing *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1964)). Accordingly, *Pullman* abstention involves three prerequisites:

> "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue."

*Sorrell,* 221 F.3d at 385. Unlike *Younger,* which is required when its criteria are present, *Pullman* abstention "is not an automatic rule ...; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *see also Moe v. Dinkins,* 635 F.2d 1045, 1046 (2d Cir.1980) (abstention should be utilized "with strict circumspection"). A district court's exercise of this discretion requires "careful balancing ... with the

balance heavily weighted in favor of the exercise of jurisdiction." *Sorrell,* 221 F.3d at 385 (internal quotations and citations omitted).

Defendants argue that *Pullman* abstention is appropriate as to four of the challenged MHL provisions, namely §§ 10.06(f), 10.06(k), and 10.07(c) and (d).

 Section 10.06(f) states that where "the attorney general determines that the protection of public safety so requires, the Attorney General may file a securing petition .... In such circumstance, there shall be no probable cause hearing until such time as the case review team may find that the respondent is a sex offender requiring civil management." Defendants contend that the statute should be interpreted to require the Attorney General to "file" a securing petition in a court of law, thus providing for the notice and opportunity to be heard that the Due Process Clause requires. (Defs.' Mem. L. 23.) Abstention is not warranted, however, when the construction urged by a litigant would require the Court to supply missing words or terms to the statute. *Naprstek v. City of Norwich,* 545 F.2d 815, 818 (2d Cir.1976). As Judge Lynch found in his November 16, 2007 Order, § 10.06(f) "unquestionably does not require that anyone give notice to the respondent, in advance of the detention, that he will be detained by a securing petition.... Moreover, the statute gives an individual no opportunity to contest the petition, in advance of its issuance." 2007 WL 4115936, at *7. *Pullman* abstention is not warranted with respect to § 10.06(f).

 Section 10.06(k) provides for mandatory detention pending trial upon a showing of "probable cause to believe the respondent is a sex offender requiring civil management." Defendants argue that *Pullman* abstention is warranted because state courts have determined that a find-

ing of dangerousness is inherent in the probable cause determination. (Defs.' Mem. L. 24.) As Judge Lynch's Order illustrates, however, such an interpretation of the statute does not avoid the constitutional problem. The statutory "civil management" scheme involves detention of some offenders, but also provides for parole—or probation-like supervision in the community for others. 2007 WL 4115936, at *13. Section 10.06(k) requires detention of *all* sex offenders requiring civil management, even those who may not be found sufficiently dangerous to detain after trial. Interpreting the statute as the Defendants urge would fail to provide for the individualized and specific determination of dangerousness that the Constitution requires in civil commitment cases. 2007 WL 4115936, at **13–15; *see also Kansas v. Crane,* 534 U.S. 407, 410, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Because the Defendants' proffered interpretation of the statute would not avoid the constitutional problem, *Pullman* abstention is not warranted with respect to § 10.06(k).

*Pullman* abstention is similarly unwarranted with respect to §§ 10.07(c) and (d). The parties are in agreement (and the statute is clear on its face) that whether or not a respondent committed a sex offense must be shown by "clear and convincing" evidence. *See* §§ 10.07(c) and (d); (Defs.' Mem. L. 24; Pl.'s Opp. Mem. 15). The parties dispute whether the Constitution requires application of the "beyond a reasonable doubt" standard instead of the "clear and convincing evidence" standard, but this dispute is not a dispute about the interpretation of the statute, which is clear. *See Pharmaceutical Soc. of New York v. Lefkowitz,* 586 F.2d 953, 957 (2d Cir.1978) ("Abstention could hardly be justified on the theory that the state court might invent an interpretation at odds with the statute's clear language.")

## III. MERITS OF SUMMARY JUDGMENT MOTIONS

### A. Summary Judgment Standard

A district court will grant summary judgment only when there is "no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir.2000). Genuine disputes of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." *Heublein v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (citing *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). While a court must always "resolv[e] ambiguities and draw [ ] reasonable inferences against the moving party," *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Id.* at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Establishing such facts requires going beyond the allegations of the pleadings, as

the moment has arrived "'to put up or shut up.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (citation omitted).

These same standards apply where, as here, there are cross-motions for summary judgment. *Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.,* 88 F.Supp.2d 188, 193 (S.D.N.Y.2000). A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (*quoting Schwabenbauer v. Bd. of Educ. of Olean,* 667 F.2d 305, 313–14 (2d Cir.1981))

 Facial invalidation of a statute is an extraordinary remedy and generally is disfavored. *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998). A litigant seeking to mount a facial challenge to a legislative enactment bears a heavy burden of demonstrating that there is "no set of circumstances" in which the challenged legislation could be applied constitutionally. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *United States v. Rybicki,* 354 F.3d 124, 130 (2d Cir.2003). Therefore, a court need only determine "whether there are 'any circumstances under which the [provisions] of the Act are permissible in order to uphold the Act.'" *Velazquez v. Legal Serv. Corp.,* 164 F.3d 757, 763 (2d Cir.1999) (quoting *Able v. United States,* 88 F.3d 1280, 1290 (2d Cir.1996)). Outside of the special context of the First Amendment, plaintiffs challenging the facial constitutionality of a statute must demonstrate that the statute is invalid "in all applications." *Brooklyn Legal Servs. Corp. v.*

*Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir.2006).

## B. The Challenged SOMTA Provisions

### 1. MHL § 10.06(f)

▮ In his November 16, 2007 Order, Judge Lynch declined to enjoin enforcement of MHL § 10.06(f), which allows the Attorney General to file a "securing petition" that will cause an offender whose release from incarceration or parole is imminent to be detained while a case review team determines if that offender requires "civil management." Judge Lynch found that while the provision unquestionably lacked Due Process protections on its face, Plaintiff could not show on the record before the court that the provision would be administered or interpreted in an unconstitutional manner. 2007 WL 4115936, at **7–11. Even though § 10.06(f) does not provide for notice or an opportunity to be heard before a securing petition is issued, the statute is capable of constitutional application because there are situations in which "an executive official, with cause to believe an individual is dangerous, can constitutionally detain such an individual in advance of a court hearing." *Id.* at *10 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Charles W. v. Maul*, 214 F.3d 350, 353 (2d Cir.2000); *Project Release v. Prevost*, 722 F.2d 960, 966 (2d Cir.1983)). As Judge Lynch found, "[i]f there are situations in which a potentially dangerous offender who may qualify as a mentally abnormal sex offender requiring confinement is unexpectedly scheduled for imminent release, and the detention is limited to a brief period before a judicial hearing, the resulting emergency may justify a short period of detention pending such a hearing." 2007 WL 4115936, at *11.

Seven securing petitions have been filed since SOMTA was enacted. (Pl.'s R. 56.1 St. ¶ 4.) The first securing petition was filed on April 13, 2007, the day that SOMTA took effect. (Gagan Decl. ¶ 15 and Ex. 1.) The case review team, however, was able to complete its review of the respondent's case on his scheduled release date, and the respondent ultimately was not detained pursuant to a securing petition. (Gagan Decl. ¶ 17.) The next securing petition was filed on July 10, 2007, when respondent W.S. requested release from St. Lawrence Psychiatric Center under a statute providing for release within 72 hours. (Gagan Decl. ¶ 19.) The judge refused to order W.S.'s continued confinement, and the Attorney General withdrew the securing petition. (Gagan Decl. ¶ 20.) W.S. was therefore never detained pursuant to a securing petition.

The five remaining securing petitions were filed after a New York Court of Appeals decision resulted in the invalidation of certain post-release supervision sentences, which prompted some respondents to file *habeas corpus* petitions for immediate release. (Gagan Decl. ¶ 21.) With regard to S.M., a court issued a securing order on July 16, 2008. (Gagan Decl. ¶ 25.) That order terminated by its own terms the next day. (*Id.*) For R.W., a securing order was issued on July 22, 2008, and a civil management petition was filed against Washington on July 24, 2008. (Gagan Decl. ¶ 29.) S.R. was served with a securing order on July 30, 2008. (Gagan Decl. ¶ 32.) The Attorney General filed a civil management petition against him on August 5, 2008. (Gagan Decl. ¶ 33.) With regard to A.S., a securing petition was filed on August 6, 2008, in anticipation of a habeas corpus hearing scheduled for August 7. (Gagan Decl. ¶ 34–35.) On August 8, 2008, the case review team determined that A.S. did not require civil management, and he was released. (Gagan Decl. ¶ 37.)

P.F. was served with a securing order on August 20, 2008, and was released two days later, when the case review team determined that he did not require civil management. (Gagan Decl. ¶ 41.)

In denying Plaintiff's Motion for a Preliminary Injunction with respect to § 10.06(f), Judge Lynch stated that it was unclear at that point whether a set of circumstances existed that would allow the provision to operate constitutionally—that is, whether there would be "situations in which a potentially dangerous offender who may qualify as a mentally abnormal sex offender requiring commitment is unexpectedly scheduled for imminent release, and the detention is limited to a brief period before a judicial hearing." 2007 WL 4115936, at *11. Defendants have shown that such circumstances exist, since those under the purview of the Act may petition for release from custody prior to any scheduled or anticipated release date, and any period of detention in such cases has been short.

Whether or not § 10.06(f) operated constitutionally in any individual case is an issue that may be pursued in that respondent's individual case. Plaintiff has not met its burden of showing that the provision is necessarily unconstitutional in every application, and Defendants have shown that situations exist in which § 10.06(f) may be applied constitutionally.

Accordingly, § 10.06(f) is not facially unconstitutional. Defendants' Motion for Summary Judgment is GRANTED with respect to § 10.06(f), and Plaintiff's Motion for Summary Judgment is DENIED with respect to that provision.

### 2. MHL § 10.06(k)

 Section 10.06(k) provides that upon a finding of probable cause that an individual is a sex offender requiring civil management, that respondent will be detained pending completion of the civil commitment trial. MHL § 10.06(k). In his November 16, 2007 Order, Judge Lynch preliminarily enjoined enforcement of § 10.06(k).

When a proceeding may result in detention, an individual may be detained pending that proceeding upon a finding of probable cause to believe the facts justifying ultimate detention exist, plus a finding that lesser conditions of supervision during pendency will not be sufficient to guarantee the safety of the community. *See United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Section 10.06(k), however, provides for detention of *all* respondents as to whom there is probable cause to believe they qualify as sex offenders requiring civil management, without an individualized finding that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending adjudication.

Defendants argue here, just as they argued unsuccessfully before Judge Lynch, that a finding of dangerousness is inherent in a finding of probable cause, which under the statute requires a finding that the respondent suffers from a Mental Abnormality. Mental Abnormality, in turn, is defined to include only those individuals predisposed "to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct." MHL § 10.03(i). (Def.s' Mem. L. 36); *see also* 2007 WL 4115936, at *12.

As Judge Lynch found, however, not all sex offenders who have a Mental Abnormality require detention under the terms of Article 10. A sex offender with a Mental Abnormality meets the definition of a "sex offender requiring civil management." The category "sex offender requiring civil

management" is broad and encompasses not only those offenders subject to detention, but also those subject only to parole—or probation-like conditions of supervision. 2007 WL 4115936, at *13. Section 10.06(k), therefore, provides for automatic detention of all individuals subject to Article 10, without a judicial proceeding to determine dangerousness. Section 10.06(k) is therefore unconstitutional on its face, and Plaintiff's Motion for Summary Judgment must be granted with respect to that section.

### 3. MHL § 10.07(d)

■ MHL Section 10.07(d) allows for detention following a commitment trial for individuals who have been charged with sex offenses but determined by a court to have been so incapacitated as to have been unable to help prepare their own defense, and therefore unable to stand trial. These so-called "Article 730 defendants" may be detained following a commitment trial where the Attorney General can "prov[e] by clear and convincing evidence [at the commitment trial] that respondent did engage in the conduct constituting [the sex] offense" for which the Article 730 defendant was indicted. MHL § 10.07(d). Article 730 defendants, therefore, may be designated "sex offenders" and potentially subjected to involuntary detention without having been found beyond a reasonable doubt to have committed a crime.[13]

In his November 16, 2007 Order, Judge Lynch found that although an individual may be civilly committed based on a finding, by clear and convincing evidence, that the individual is mentally ill and dangerous, *see Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), Article 10 applies only to those who have committed the conduct constituting a sexual *offense.* 2007 WL 4115936, at *18.

Defendants argue here, as they argued before Judge Lynch, that the Article 10 proceedings are civil in nature, and accordingly require only the "clear and convincing evidence" standard. As Judge Lynch found, however, Article 10 does not apply to all citizens. Article 10 applies only to those who have committed conduct constituting a sexual offense, and Article 10 respondents are labeled "sex offenders." "Application of the stigma associated with a finding of criminality elevates the statute beyond the ordinary civil standards of proof/ and requires proof beyond a reasonable doubt, regardless of the 'civil' label attached to the statute." 2007 WL 4115936, at *18. For those who have never been found guilty of a criminal offense beyond a reasonable doubt, the MHL is facially unconstitutional as it applies the label of "sex offender" with its attendant consequences based only on a finding by "clear and convincing evidence" that the respondent committed the conduct constituting a crime.

### 4. MHL § 10.07(c)

■ MHL Section 10.07(c) authorizes the factfinder at the civil commitment trial to make a retroactive determination by clear and convincing evidence that certain non-sex crimes were committed with a "sexual[ ] motivat[ion]." MHL § 10.07(c). Judge Lynch found in his November 16, 2007 Order that Section 10.07(c) presented a closer question than Section 10.07(d), given that the Article 730 Defendants cov-

---

**13.** Article 10 also applies to offenders found "not responsible by reason of mental disease or defect." *See* NYCPL § 330.20. Whereas Article 730 Defendants have never faced an adjudication of their conduct, the "Article 330 Defendants" have been found beyond a reasonable doubt to have committed the conduct constituting a sexual offense. *See* MHL § 10.03(g)(3).

ered by Section 10.07(c) have already been found, beyond a reasonable doubt, to have committed a serious felony. 2007 WL 4115936, at *21. While the determination that a crime was sexually motivated is a serious matter, Judge Lynch found that the concerns of those who had already been convicted of a crime were was less serious than the interests of those defendants who have not been convicted. *Id.*

To determine whether Section 10.07(c) violates the due process rights of those affected by it, this Court must consider:

[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

This Court agrees with Plaintiff that due process requires that sexual motivation be proven beyond a reasonable doubt.

With respect to the first *Mathews v. Eldridge* factor, Judge Lynch noted that the individual interests at stake were of the "highest level," and included both physical liberty and the stigma of being branded a "sex offender." 2007 WL 4115936, at *23.

As to the risk of an erroneous deprivation and the probable value of additional safeguards, the Supreme Court has noted that although "the ultimate truth as to how the standards of proof affect decisionmak-

ing may well be unknowable ... adopting a 'standard of proof is more than an empty semantic exercise.'" *Addington v. Texas,* 441 U.S. at 424–25, 99 S.Ct. 1804 (1979) (quoting *Tippett v. Maryland,* 436 F.2d 1153, 1166 (4th Cir.1971) (Sobeloff, J., concurring in part and dissenting in part)).

Here, the risk of an erroneous deprivation is high. Civil commitment as a "sex offender" under Article 10 subjects a person to several impositions on personal liberty that are not present in the more traditional civil commitment circumstances. Those committed as "sex offenders" under Article 10 are housed in a secure psychiatric facility and segregated from those who are not "sex offenders." MHL § 10.10(d), (e). After release from confinement, those labeled "sex offenders" are subjected a regimen of "strict and intensive supervision and treatment," which

may include but need not be limited to, electronic monitoring or global positioning satellite tracking for an appropriate period of time, polygraph monitoring, specification of residence or type of residence, [and] prohibition of contact with identified past or potential victims.

MHL § 10.11.[14]

Given the attendant stigma and significant liberty infringements that result from application of the label "sex offender" under Article 10, the consequences of an erroneous application of that label are severe.

Furthermore, for offenders who commit crimes after the enactment of Article 10, the State legislature has determined that the "beyond a reasonable doubt" standard is appropriate for the "sexual motivation"

---

**14.** Moreover, those labeled "sex offenders" in New York State must report on their residence annually, give notification after moving, report on locations of employers or insti-

tutions of higher education they attend, and report on internet service providers, screen names, and e-mail accounts. *See* New York Correction Law Article 6–C.

determination. The Act amended New York's criminal code to create a new crime: the commission of any one of a set of serious felonies "for the purpose, in whole or substantial part, of his or her own direct sexual gratification." NYPL § 130.91. Given that sexual motivation is an element of a crime that must be proven beyond a reasonable doubt for offenders who commit crimes after the enactment of Article 10, it is "difficult for defendants to argue either that the retroactive finding of sexual motivation is not a finding of the element of a criminal offense, or that requiring such a finding ... will cripple, or even hamper, accomplishment of the State's salutary purposes in enacting Article 10." 2007 WL 4115936, at *25.

Because of the individual interests at stake, the risks of erroneous adjudication that accompany a lower standard of proof, and the State's minimal interest in the lower standard, this Court finds that the determination that an individual is a sex offender must be made "beyond a reasonable doubt," and Section 10.07(c) is facially unconstitutional in requiring such a determination to be made only by "clear and convincing evidence."

5. MHL § 10.05(e)

■ Section 10.05(e) provides for psychiatric examinations, without the presence of counsel, prior to commitment hearings. Plaintiff argues that Section 10.05(e) violates the due process rights of those subject to the Act because the notice for the exam fails to advise recipients adequately of the purpose and possible consequences of the examination, and that the examination constitutes a "critical stage" of the commitment proceeding that triggers the right to counsel. (Pl.'s Mem. L., pp. 42–50.)

Article 10 provide for counsel at state expense upon the Attorney General's initiation of a formal action against a respondent. MHL § 10.06(c). Nevertheless, before the institution of any judicial proceeding, the CRT may request that an offender submit to a psychiatric examination. MHL § 10.05(e). Although the offender may decline to participate in the examination, the jury at the commitment trial "may hear evidence of the degree to which the respondent cooperated with the psychiatric examination." MHL § 10.07(c).

Although the Second Circuit has suggested that those undergoing involuntary commitment proceedings have a right to counsel, the Second Circuit declined to extend that right to prehearing psychiatric interviews. *Project Release v. Prevost,* 722 F.2d 960, 976 (2d Cir.1983). This Court agrees with Judge Lynch that the pre-hearing psychiatric interview does not on its face constitute a "critical stage" of the commitment proceeding, such that specific notice of rights and the presence of counsel would be required. 2007 WL 4115936, at *28. This is especially true because any individual against whom a civil management petition has been filed can petition for his own examiner, paid for by the State, to examine the individual to rebut the report or testimony of the original psychiatric examiner. MHL § 10.06(e). Plaintiff's arguments that the notice provided under 10.05(e) is served on those who cannot understand it, and that the psychiatric examiner often testifies for the State at the commitment trial, are brought more properly as "as applied" challenges to the Article 10 regime.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment is GRANTED with respect to the challenged portions of MHL Sections 10.06(k), 10.07(c), and 10.07(d) and DENIED in all other respects. Defendants'

Motion for Summary Judgment is GRANTED with respect to the challenged portions of MHL Sections 10.06(f), and 10.05(e) and DENIED in all other respects.

Whereas MHL §§ 10.06(k), 10.07(c) and 10.07(d) violate the Due Process rights of MHLS constituents, Defendants are permanently enjoined from enforcement of the challenged portions of those provisions. Plaintiff is directed to consult with Defendants and submit a proposed form of Order consistent with this Opinion within 10 days of the date of this Order.

SO ORDERED.